UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEOPOLDO MANZO, JR., <br> Plaintiff, <br> v. <br> COUNTY OF SANTA CLARA, et al., <br> Defendants. | Case No. 17-cv-01099-BLF (VKD) <br><br> **ORDER RE DISCOVERY DISPUTE RE PRODUCTION OF SABOT CONSULTING REPORT** <br><br> Re: Dkt. No. 45 |

Plaintiff Leopoldo Manzo, Jr. sued defendants County of Santa Clara ("the County") and several individual corrections officers for constitutional violations and violations of federal and state law relating to Mr. Manzo, Jr.'s detention in jails operated by the County. The parties dispute whether the County should be required to produce a report prepared by Sabot Consulting in connection with settlement negotiations in another lawsuit, describing the facilities, programs, policies, procedures, and practices of three Santa Clara County jails with respect to access by mobility-disabled inmates ("the Sabot Report"). The parties jointly briefed the dispute to the Court, and the County submitted a copy of the Sabot Report to the Court for *in camera* review. Dkt. Nos. 45, 46. The Court held a hearing on the matter on July 2, 2019. Dkt. No. 47.

The Court grants Mr. Manzo, Jr.'s motion to compel production of the Sabot Report.

## I. BACKGROUND

Mr. Manzo, Jr. was detained between December 2014 and December 2016 in the Santa Clara County Main Jail. Dkt. No. 1 ¶ 23. In his complaint, Mr. Manzo, Jr. asserts claims for violation of his constitutional right to be free from cruel and unusual punishment, including excessive force; disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act; and violations of state law. *Id.* ¶¶ 111-148.

1    According to the parties' joint submission, an independent consulting firm prepared the
2    Sabot Report at the joint request of the parties to *Cole v. County of Santa Clara*, No. 16-cv-06594-
3    LHK (N.D. Cal.) in connection with pre-lawsuit settlement discussions involving a putative class
4    of disabled prisoners in Santa Clara County jails. The Sabot Report describes the consultant's
5    review, evaluation, and recommendations regarding the facilities, programs, policies, procedures,
6    and practices of three Santa Clara County jails with respect to access by mobility-disabled
7    inmates. Apparently, the *Cole* parties agreed to treat the report as confidential settlement-related
8    material for as long as their settlement negotiations continued prior to a lawsuit being filed. Dkt.
9    No. 45 at 2, 5. Mr. Manzo, Jr. quotes from a purported agreement between the *Cole* parties (which
10   neither party submitted to the Court) that if the *Cole* parties failed to settle before a suit was filed,
11   "the Expert's assessment and report will no longer be treated as confidential settlement
12   communications and may be used in a court of law, subject to a protective order and/or redaction
13   as appropriate." *Id*. at 2–3. Mr. Manzo, Jr. says that the settlement negotiations failed, and the
14   *Cole* lawsuit was filed on November 14, 2016. *Id.* at 3. The County does not dispute Mr. Manzo,
15   Jr.'s characterization of the *Cole* parties' agreement, except to say that the parties continued to
16   negotiate even after the lawsuit was filed and continued to treat the Sabot Report as confidential.
17   *Id.* at 5. Mr. Manzo, Jr. disputes that the *Cole* parties have kept the report confidential, observing
18   that the *Cole* plaintiffs filed described at length many of the report's findings in the complaint they
19   filed on the public docket. *Id*. at 3 (citing *Cole v. County of Santa Clara*, No. 16-cv-06594-LHK,
20   Dkt. No. 1 at ¶¶ 64-100, 127 (N.D. Cal. Nov. 14, 2016).

21   **II.     DISCUSSION**

22   Mr. Manzo, Jr. moves to compel production of the Sabot Report on the ground that it
23   contains information relevant to the claims and defenses in this case. In particular, he argues that
24   the Sabot Report describes the County's policies and practices with respect to ADA requirements
25   during the period of his detention. Dkt. No. 45 at 1. Mr. Manzo, Jr. says that the jails have been
26   "modified significantly" since he left, and that the report therefore includes relevant information
27   that is no longer discoverable by other means. *Id.* He also says that the report describes potential
28   sources of additional discovery relevant to his claims in this case. *Id.* at 3.

2

The County opposes production of the report on several grounds. First, the County says that the Sabot Report is not responsive to any pending request for documents. *Id.* at 6. This argument is not well-taken. The report, which includes a description and evaluation of the County's policies and procedures concerning compliance with the ADA, is responsive to Mr. Manzo's Request for Production No. 4 ("All DOCUMENTS of any kind EVIDENCING the policies and/or procedures of COUNTY CONCERNING jail ADA compliance, include what, as of 2010, was policy number 13.11."). In any event, this particular argument appears to have been mooted by Mr. Manzo, Jr.'s service of a document request specifically asking for the Sabot Report. *Id.* at 4, 6 n.2.

Second, the County argues that the Sabot Report is both inadmissible and irrelevant. The dispute before the Court raises only the question of whether the County must produce the Sabot Report, and not whether the report itself is admissible at trial for any purpose. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Accordingly, the Court considers only whether the report is discoverable—i.e., nonprivileged matter that is relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). On the issue of relevance, the County essentially argues that the report is not relevant because Mr. Manzo, Jr.'s claims lack merit. Dkt. No. 45 at 6–7.

However, in evaluating whether discovery material is relevant to a claim or defense, the Court does not assess the ultimate merits of the claim or defense, but only whether the material tends to make the existence of any fact that is of consequence to the determination of the claim more or less probable. *See* Fed. R. Evid. 401. Here, the complaint pleads both constitutional violations and violations of the ADA and Rehabilitation Act, as well as state law claims. Dkt. No. 1 ¶¶ 111-148. It includes allegations concerning the County's alleged policies, practices, and procedures relating to the treatment of inmates with mental and physical disabilities in support of these claims. *Id.* The Sabot Report contains information regarding the County's facilities, programs, policies, procedures, and practices regarding treatment of mobility-disabled inmates as of 2015. The report discusses some of the same access issues and practices to which Mr. Manzo, Jr. refers in his complaint. Mr. Manzo, Jr. was housed in the jail facilities that the report discusses

3

at the time the report was prepared, and he also has a disability that limits his mobility. The Court concludes that Mr. Manzo, Jr. has demonstrated that the report contains material that is relevant to his claims.

Third, defendants argue that because the Sabot Report was prepared in connection with settlement negotiations in another matter, the report is either privileged or subject to production only upon a heightened showing of need. Dkt. No. 45 at 7. The Court considers each of these arguments separately.

The parties agree that federal law governs the question of whether the Sabot Report is privileged from disclosure to Mr. Manzo, Jr. Federal Rule of Evidence 408 governs the *admissibility* of evidence of conduct or statements made during settlement negotiations. It provides that such evidence is not admissible when offered to prove liability, but may be admitted for other purposes. Fed. R. Evid. 408; *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007). Rule 408 does not address the *discoverability* of settlement-related materials, and the Ninth Circuit has not found a federal privilege for settlement communications. *See Rhoades*, 504 F.3d at 1162 (holding that "statements made in settlement negotiations are only excludable under the circumstances protected by the Rule"). Several district courts in the Ninth Circuit have observed that an absolute privilege against discovery of such materials would be inconsistent with both Rule 408 and Federal Rule of Civil Procedure 26(b). *See Alfaro v. City of San Diego*, No. 3:17-cv-00046-H-KSC, 2018 WL 4562240, at *5–6 (S.D. Cal. Sept. 21, 2018); *Williams v. Bridgeport Music, Inc.*, No. CV 13-6004-JAK (AGRx), 2014 WL 12498232, at *2 (C.D. Cal. July 10, 2014) (collecting cases); *Vondersaar v. Starbucks Corp.*, Case No. C 13-80061 SI, 2013 WL 1915746, at *3 (N.D. Cal. May 8, 2013) (finding no federal privilege preventing the discovery of settlement communications); *Matsushita Elec. Indus. Co. v. Mediatek, Inc.*, No. C-05-3148 MMC (JCS), 2007 WL 963975, at *2–3 (N.D. Cal. Mar. 30, 2007) (same). Even if a settlement privilege existed, the County has not shown that the Sabot Report would qualify for protection. The report does not reflect any settlement communications between the *Cole* parties, and while it does include recommendations for changes to the County's jail facilities, policies, practices, and programs, these are the recommendations of an independent consultant and not offers of

4

compromise or negotiating positions of any party. The County may not immunize from discovery a report describing the facilities, programs, policies, procedures, and practices of its jails simply because the report was considered by the *Cole* parties in their settlement negotiations. *See Williams*, 2014 WL 12498232 at \*2 (observing that a party cannot immunize information from discovery by disclosing it in settlement discussions). The Court concludes that no federal privilege protects the Sabot Report from disclosure to Mr. Manzo, Jr. as part of discovery in this case.

Regarding whether the Sabot Report is subject to production only upon a heightened showing of need, the County argues that the Ninth Circuit "has approved applying heightened requirements" to requests for production of "settlement materials," citing *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142 (9th Cir. 2000). However, *Lobatz* does little to inform the resolution of this discovery dispute. That case considered a request by a member of a plaintiff class for discovery of settlement negotiations between the parties so that she could challenge the fairness of the settlement reached and class counsel's request for attorneys' fees and costs. In affirming the district court's denial of discovery to the class member, the Ninth Circuit stated:

> We conclude the district court did not abuse its discretion in denying this requested discovery. Settlement negotiations involve sensitive matters. We agree with the Seventh Circuit that "discovery [of settlement negotiations] is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive." [Class member] made no foundational showing of collusion. Her requested discovery of the settlement negotiations, therefore, was properly denied.

*Id.* at 1148 (internal citations omitted). Here, the Ninth Circuit addresses the discoverability of "settlement negotiations" incident to a challenge to the fairness of the settlement itself and the resulting fee award, and not the discoverability of a document like the Sabot Report which contains no settlement negotiations. Moreover, the rule announced by the Ninth Circuit is not the general rule of "heightened need" that the County advocates, but rather a rule that appears to be specific to discovery sought in aid of a challenge to an underlying settlement.

The County also cites the Federal Circuit's decision in *In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012) in support of its argument that Mr. Manzo, Jr. must show a "heightened need" for

the Sabot Report before the County can be compelled to disclose it. But *MSTG* also does not help the County. As the County concedes, the Federal Circuit found no federal privilege for settlement negotiations. *See id.* at 1343–46. The Federal Circuit did not "approvingly describe" the use of heightened standards for discovery of settlement discussions, as the County claims. Rather, the court said simply:

> We note that other courts have imposed heightened standards for discovery in order to protect confidential settlement discussions. . . . Because the issue is not before us, we reserve for another day the issue of what limits can appropriately be placed on discovery of settlement negotiations. But the existence of such authority, whatever its scope, strongly argues against the need for recognition of a privilege. In other words, the public policy goals argued to support a privilege can more appropriately be achieved by limiting the scope of discovery.

*Id.* at 1347; *see also id.* at 1346–47 (describing district court's authority to limit abusive or disproportionate discovery and to issue protective orders to protect confidentiality). Here, Mr. Manzo, Jr. does not seek discovery of any settlement negotiations between the *Cole* parties, and thus he need not meet any additional or heightened requirements for obtaining discovery of the Sabot Report beyond the requirements of relevance and proportionality demanded by Rule 26(b)(1).

Finally, the County argues that an order compelling it to produce the Sabot Report disproportionately burdens the County. The County concedes that producing the report itself is not at all burdensome. Rather, it argues that requiring the County to produce *this* report—a candid, neutral, independent assessment of the County's facilities, programs, policies, procedures, and practices in its jails—will "function as a powerful disincentive to cooperate [with plaintiffs] in future cases." Dkt. No. 45 at 8. This is a surprising argument, given the County's status as a public entity. The County does not explain how the joint commission of such a report and its subsequent disclosure in this case creates a disincentive for the County to act other than in the best interests of the public. The County additionally argues that requiring production of the Sabot Report is unfair (and disproportionately favorable to Mr. Manzo, Jr.) because it will allow Mr. Manzo, Jr. to avoid retaining his own expert. *Id.* at 8. The County's speculation about how Mr. Manzo, Jr. may use the report is difficult to credit, but even so, the fact that discovery benefits an

6

adversary or allows an adversary to avoid expense does not make the discovery disproportionate under Rule 26(b)(1).

### III. CONCLUSION

For the reasons explained above, the Court orders the County to produce the Sabot Report to Mr. Manzo, Jr. If appropriate, the report or portions of it may be designated under the protective order issued in this case (Dkt. No. 33) to protect the confidentiality of the material.

**IT IS SO ORDERED.**

Dated: July 3, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge